UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CARL WOODMAN, | ) | Case No.: 1:10 CV 1818 |
| | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| J.T. SHARTLE, | ) | |
| | ) | |
| Respondent | ) | ORDER |

Currently pending in the above-captioned case is Petitioner Carl Woodman's ("Petitioner" or "Woodman") Petition for a Writ of Habeas Corpus Pursuant to § 2241 ("Petition") (ECF No. 1). For the following reasons, the court denies Petitioner's Petition.

## I. FACTUAL AND PROCEDURAL HISTORY

On December 19, 2002, a jury convicted Woodman of Conspiracy to Defraud the United States, in violation of 18 U.S.C.§ 371 and Failure to file a Tax Return, in violation of 26 U.S.C. §7203. This court sentenced him on April 15, 2003, to a prison term of 12 months and one day on both Counts. Six days later, this court granted Petitioner's Motion to Stay Execution of Prison Sentence pending appeal and for the appointment of counsel on appeal.

During the pendency of his appeal and thereafter, Woodman telephoned his pretrial services officer on a weekly basis. When he relocated to a different address in Lakewood, Ohio in September

2003, Woodman notified his pretrial services officer ("PO").

The Sixth Circuit Court of Appeals affirmed Woodman's conviction on November 29, 2004. Thereafter, Petitioner continued his weekly calls to pretrial services. It was not until early October 2009, that the PO advised Petitioner that he was scheduled to surrender to federal prison in Morgantown, West Virginia "three days ago." (Pet.'s Memo. in Supp. of Petition, ECF No. 1-1, at 3.) Woodman was unaware of this notice and later learned it was sent to his former address.

Petitioner contacted the court, as instructed by his PO. Counsel was appointed for Woodman on November 25, 2009. A telephone conference was conducted on December 1, 2009, after Petitioner's attorney filed a November 30, 2009 Motion to Defer Self Surrender to the BOP. This court recommended the deferral of Petitioner's date of self-surrender until January 11, 2010.

On January 8, 2010, Petitioner's attorney filed a Motion to Alter Judgment and to Modify Sentence Pursuant to 18 U.S.C. 3582(c)(2) (ECF No. 150) and another Motion to Defer Self Surrender to the BOP until February 11, 2010 (ECF No. 151). Three days later, Petitioner filed a *pro se* Motion (letter) for Emergency Stay of Execution of Sentence Due to Obsolete PSI report and Grossly Inaccurate and Missing Medical Information (ECF No. 152). The court granted the Motion to Defer and Woodman was scheduled to self surrender to the BOP on February 11, 2010.

On February 10, 2010, Petitioner's attorney filed a Motion to Further Defer Self-Surrender Date (ECF No. 154) and a Motion Requesting the Court to Consider Medical Letter from Dr. Clifford D. Packer, M.D. regarding the Defendant (ECF No. 155). The following day, this court denied Petitioner's Motion to Alter Judgment and to Modify Sentence Pursuant to 18 U.S.C. 3582(c)(2) based on a lack of jurisdiction. The same date, Petitioner's Motion to Self Surrender on January 11, 2010 was denied as moot. Petitioner self surrendered to the BOP on February 11, 2010.

2

An Order requiring Respondent make a return to the writ within twenty days was issued on November 19, 2010. (ECF No. 9.) The Return was due on December 9, 2010. Respondent filed a Motion for Extension of Time, in which he asked for an extension until December 17, 2010 to respond to the Order to Show Cause. (ECF No. 14.) Respondent filed his Return, entitled Motion to Dismiss and Response to Show Cause Order, on December 17, 2010 (ECF No. 16).

## II. LAW AND ANALYSIS

Petitioner argues that he should be released from jail on bond either because: (1) he should be credited with serving the time from the date on which his sentence should have began, which would have been shortly after the Sixth Circuit affirmed his conviction; or (2) the government should have been estopped from enforcing his sentence because it was negligent in waiting so long to enforce it.

### A. Administrative Remedies

An inmate must exhaust all levels of review before filing his complaint in federal court. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006); *see also Little v. Hopkins*, 638 F.2d 953, 953-54 (6th Cir. 1981) ("It is well established that federal prisoners complaining of events or conditions relating to their custody must exhaust their administrative remedies before habeas relief may be granted."); *United States v. Martinez*, 837 F.2d 861, 865-66 (9th Cir. 1988), citing *Shabazz v. Carroll*, 814 F.2d 1321 (9th Cir.1987) ("In any event, Martinez's claim for credit for time at liberty is premature. There is no showing in the record that Martinez has pursued administrative remedies through the prison system. . . . This court has very recently reaffirmed that it lacked jurisdiction to grant credit toward the sentence of a federal prisoner."); *United States v. Clayton*, 588 F.2d 1288, 1292 (9th Cir.1979) ("It is the administrative responsibility of the Attorney General, the Department of Justice,

and the Bureau of Prisons to compute sentences and apply credit where it is due. It is not the province of the sentencing court.") The Sixth Circuit has held that "[t]he Bureau of Prisons should be given an opportunity to consider the application of its policy to [the petitioner's] claim before the matter is litigated in the federal courts." *Urbina v. Thoms*, 270 F.3d 292, 295, n.1 (6th Cir. 2001) (internal citations omitted).

Woodman admits that he has not exhausted his administrative remedies in this case. (Pet., at p. 3A.) Respondent explains the administrative process that Petitioner took:

> Petitioner filed four administrative remedies in this case, beginning on August 17, 2010. (Wolever Dec. at ¶¶ 8, 9 [ECF No. 16-2].) Petitioner's first administrative remedy request was rejected because Petitioner did not follow the proper procedures. (*Id*. at ¶ 9.) On August 20, 2010, Petitioner resubmitted his administrative remedy request, which was denied by the Warden on September 3, 2010. (*Id*.) On September 13, 2010, Petitioner appealed the denial to the Regional Office, which appeal was denied on October 12, 2010. (*Id*.) On October 25, 2010, Petitioner appealed the denial to BOP's Central Office. (*Id*. at ¶ 10.) The Central Office has a total of 60 days within which to respond to an administrative remedy appeal. 28 C.F.R. § 542.18. In this case, the Central Office response is due December 24, 2010, and no final response has been issued. (*Id*.)

(Return, at p. 6.)

The exception to the exhaustion requirement is if Petitioner can show "cause and prejudice." *Davis v. United States*, 411 U.S. 233 (1973); *Moscato v. Federal Bureau of Prisons*, 98 F.3d 757, 760 (3rd Cir. 1996); *Sanchez v. Miller*, 792 F.2d 694, 699 (7th 1986). The court finds that Petitioner cannot show cause or prejudice in this case. He has not alleged that administrative remedies were not available to him. Woodman argues that he will be prejudiced if he has to pursue administrative remedies because he will be released in late December. This argument is unavailing. Petitioner waited to begin the administrative remedy process until five months after his incarceration began.

Therefore, to the extent that he now claims that exhaustion is unnecessary because he is scheduled to be released this week, Petitioner should have pursued the administrative remedy process sooner. *See United States v. Bradford*, 623 F.Supp.2d 849, 854 (E.D.Mich. 2009) (An inmate alleging a delay in execution of his sentence was required to exhaust his administrative remedies before bringing his federal claim.) Therefore, the court hereby dismisses Petitioner's Petition because he failed to exhaust administrative remedies.

### B. Credit

In any event, the court finds that Petitioner's Petition fails on the merits. Petitioner proposes he is entitled to have his period of liberty from November 2004 through October 2009 counted toward his service of his federal sentence. Although the Sixth Circuit has acknowledged the existence of the doctrine of credit for time at liberty, it has not yet permitted a petitioner to avail himself of this doctrine. *See Myles v. United States*, No. 98-6097, 1999 WL 644149, *2 (6th Cir. Aug. 16, 1999) ("The doctrine of credit for time at liberty entitles a convicted person to credit against his sentence for time erroneously spent at liberty, so long as the government was guilty of simple or mere negligence and the delay in execution of the sentence was not the defendant's fault. *United States v. Martinez*, 837 F.2d 861, 865 (9th Cir.1988). In this case, the delay is attributable to state authorities, and to some extent, Myles himself. Thus, Myles is not entitled to credit for time at liberty and his claim necessarily fails.").

The doctrine of credit for time at liberty is typically applied in cases where a person is released early from jail and the time that person is erroneously free counts towards his or her time served. This is the situation in the two cases that Petitioner primarily relies on: *Martinez*, 837 F.2d at 865, and *United States ex rel Binion v. O'Brien*, 273 F.2d 495 (3rd Cir. 1960). *Martinez*, 837 F.2d

5

at 865 stated that, "[u]nder the doctrine of credit for time at liberty, a convicted person is entitled to credit against his sentence for the time he was erroneously at liberty provided there is a showing of simple or mere negligence on behalf of the government and provided the delay in execution of sentence was through no fault of his own." Martinez was not granted a credit, however, because he did not pursue administrative remedies, so his claim was premature. *Id.*, at 865-66.

*Binion* stated that "where an individual's liberty is restrained by the act of an officer of the United States having authority to exercise restraint, such individual is entitled to credit for the period of that restraint towards service of his sentence." *Id.*, at 498. In *Binion*, a probation officer required the petitioner to report while on bail, despite the fact that the officer did not have the authority to impose conditions, and this time was credited to Binion's sentence. *Id*. *Binion* relied on a Ninth Circuit case, *Smith v. Swope*, 91 F.2d 260, 262 (9th Cir. 1937), which determined that,

> [i]f a ministerial officer, such as a marshal, charged with the duty to execute the court's orders, fails to carry out such orders, that failure cannot be charged up against the prisoner. The prisoner is entitled to serve his time promptly if such is the judgment imposed, and he must be deemed to be serving it from the date he is ordered to serve it and is in the custody of the marshal under the commitment, if, without his fault, the marshal neglects to place him in the proper custody. Any other holding would give the marshal, a ministerial officer, power more arbitrary and capricious than any known in the law. A prisoner sentenced for one year might thus be required to wait forty under the shadow of his unserved sentence before it pleases the marshal to incarcerate him. Such authority is not even granted to courts of justice, let alone their ministerial officers. Citation of authority is hardly needed to establish so elementary a proposition.

The holding in *Binion* was narrowed by *Vega v. United States*, 492 F.3d 310, 316 (3rd Cir. 2007). In *Vega*, the Third Circuit adopted the following test:

> in order for a prisoner to receive credit for time he was erroneously at liberty, the prisoner's habeas petition must contain facts that demonstrate that he has been released despite having unserved time

6

> remaining on his sentence. Once he has done this, the burden shifts to the government to prove either (1) that there was no negligence on the part of the imprisoning sovereign, or (2) that the prisoner obtained or retained his liberty through his own efforts.

*Id*., at 319.

There has been one notable instance of a court applying the doctrine of credit for time at liberty when the petitioner had not yet began serving his sentence. *Ninete v. Thomas*, 607 F.Supp.2d 1201 (D.Or. 2009).  In *Ninete*, the petitioner was released pending the appeal of his conviction. When his conviction was remanded, and the District Court of Guam confirmed his sentence, petitioner should have been notified that he should self-surrender.  Instead, five months lapsed, and petitioner then filed a motion to self-surrender with the District Court.  The District Court granted the motion, but it was not until six months later that the Bureau of Prisons designated an institution for service.  *Id*., at 1202-03.  The petitioner filed a habeas corpus motion, and the District Court of Oregon credited the petitioner for the time that he was at liberty.  The court determined that "the doctrine of credit for time at liberty is an exception to the general requirement that credit cannot be given for anything other than official detention."  *Id*., at 1204.  The court in *Ninete* therefore rejected the argument that *Reno v. Koray*, 515 U.S. 50, 58, 59 (1995), stands for the principle that only time in "official detention" can be credited toward a person's sentence.

However, *Ninete* is distinguishable from Petitioner's case.  In *Ninete*, the petitioner filed a motion with the court for self-surrender.  As a result, the District Court of Oregon granted credit for the time between the filing of the motion to self-surrender and the date petitioner was provided with surrender instructions.  Therefore, the fact that Ninete filed a motion to self-surrender made it possible for the court in that case to calculate the credited time.  In the present case, Petitioner has not presented evidence that he tried to self-surrender prior to receiving his surrender instructions

7

in late 2009. Although a person is not legally required to report to jail, *United States v. Martinez*, 837 F.2d 861, 866 (9th Cir. 1988), this factor was material to the *Ninete* court because it made it possible for the court to calculate the time to be credited. Further, other Circuits have not adopted the *Ninete* decision in circumstances where the commencement of the sentence is delayed. *United States v. Barfield*, 396 F.3d 1144, 1147-48 (11 Cir. 2005) ([A] convicted person, . . . who has yet to serve any part of her sentence, is not entitled to credit for time spent erroneously at liberty when there is merely a delay in executing her sentence."); *Leggett v. Fleming*, 380 F.3d 232, 234-36 (5th Cir. 2004) (The court denied a request for credit for 3 years and 2 months that the defendant was allegedly erroneously at liberty.). The Sixth Circuit, denying Petitioner's appeal from this court's denial of his Motion for a Temporary Restraining Order, also stated that most circuits agree that a delay in the commencement of a sentence does not give a prisoner the right to credit for that time at liberty. *Woodman v. Shartle*, No. 10-4544, Order dated Dec. 20, 2010 (citing *Vega*, 493 F.3d at 315).

The court finds that Petitioner cannot prevail on the merits of his Petition. The court is not stating that there is no circumstance in which a person can receive credit for time erroneously at liberty before he is incarcerated. However, Petitioner's case does not warrant application of this doctrine.

### C. Estoppel

In the alternative, Petitioner argues that the government waived its ability to execute Petitioner's sentence by delaying the execution. (Pet.'s Memo. in Supp. of Petition, ECF No. 1-1, at p. 22.) This waiver theory was developed by the Court of Appeals for the Fifth Circuit in *Shields v. Beto*, 370 F.2d 1003, 1005 (1967), and was later refined in *Piper v. Estelle*, 485 F.2d 245, 246

(5th Cir.1973). *Piper* explained that waiver is only appropriate in limited circumstances:

> [I]t is not sufficient to prove official conduct that merely evidences a lack of eager pursuit or even arguable lack of interest. Rather the waiving state's action must be so affirmatively wrong or its inaction so grossly negligent that it would be unequivocally inconsistent with "fundamental principles of liberty and justice" to require a legal sentence to be served in the aftermath of such action or inaction.

*Piper v. Estelle*, 485 F.2d 245, 246 (5th Cir.1973). *Piper's* formulation of this rule "has since been used by courts applying this 'waiver of jurisdiction' theory to constitutional due process claims." *Hawkins v. Freeman*, 195 F.3d 732, 744 (4th Cir. 1999).

In *Shelton v. Ciccone*, 578 F.2d 1241 (8th Cir. 1978), the petitioner was released from state custody when a federal detainer that should have been lodged was not lodged with state authorities. The federal marshals knew of the petitioner's whereabouts and did not attempt to execute the judgment and commitment papers for seven years. The court did not determine that the government was grossly negligent as a matter of law but rather determined that an evidentiary hearing was necessary. The court in *Shelton* articulated the following policies behind the waiver theory:

> [t]he waiver theory encourages responsibility and accountability on the part of the Marshals to the extent that it deters the arbitrary exercise of their power. In addition, the theory encourages the prompt rehabilitation of defendants. It is based on the philosophy that a defendant should be allowed to do his time, live down his past, and reestablish himself. Permitting a sentence to go unexecuted does not encourage rehabilitation.

*Id.*, at 1245.

In *Mathes v. Pierpont*, 725 F.2d 77 (1984), the State of Oklahoma released petitioner's detainer in 1974 and failed to file another detainer until 1981. The court determined that the government was not grossly negligent and that the State of Oklahoma had not waived jurisdiction.

The court based its reasoning on the fact that petitioner had spent 13 of the 16 years between 1974 and 1981 in either state or federal custody and that petitioner had "escaped from custody in Oklahoma in the first place." *Id*., at 79.

The Ninth Circuit's test for whether the estoppel theory applies is as follows:

> (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon or must act so that the party asserting the estoppel has a right to believe it is so intended; (3) the party asserting the estoppel must be ignorant of the facts; and (4) that party must rely on the former's conduct to his injury.

*Green v. Christiansen*, 732 F.2d 1397, 1399 (9th Cir. 1984). Petitioner is not likely to be able to meet the third requirement of this test in that he plainly knew that he was to report to jail when the Sixth Circuit affirmed his conviction. (Order, 1:01-CR-526, ECF No. 112.) *See also Martinez*, 837 F.2d at 865 ("Martinez was not ignorant of the facts surrounding the delay in execution of sentence. Indeed, he testified that he knew a mistake had been made.") Moreover, Petitioner has not shown that the government's actions amounted to affirmative misconduct, which the court in *Martinez* determined was necessary. *Martinez*, 837 F.2d at 865. The Ninth Circuit in *Jaa v. United States I.N.S.*, 779 F.2d 569, 572 (9th Cir.1986), determined that "[a]ffirmative misconduct must be more than negligence.... Mere unexplained delay does not show misconduct."). Therefore, Petitioner cannot prevail under the estoppel theory.

### III. CONCLUSION

For the foregoing reasons, the court hereby denies Petitioner's Petition for a Writ of Habeas Corpus Pursuant to § 2241 (ECF No. 1).

Furthermore, the court denies as moot Petitioner's Motion for Appointment of Special Process Server (ECF No. 6). Respondent filed a Return, so he has already received service in this

case.  The other two Defendants that Petitioner wanted to serve, namely Attorney General Eric Holder and the United States Attorney for the Northern District of Ohio, do not have to be served in this case because the court finds that the Petition is without merit.

     IT IS SO ORDERED.

                                     /s/SOLOMON OLIVER, JR.
                                     CHIEF JUDGE
                                     UNITED STATES DISTRICT COURT

December 22, 2010